UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT AND**
                                             **RECOMMENDATION**
v.

ERNEST GREEN,                                20-00110(FPG)(JJM)

                    Defendant.
_____

        Defendant Ernest Green is charged in a one-count Indictment [1][1] with being a

felon in possession of a firearm on or about July 26, 2020, in violation of 18 U.S.C. §§922(g)(1)

and 924(a)(2).   Following his arrest on August 5, 2020, defendant was taken to an interview

room at approximately 3:30 p.m., where he was questioned at points by law enforcement.  These

exchanges were captured on an approximately two-hour, eight-minute recorded video [52],[2] the

authenticity and accuracy of which is not disputed by the parties.

        Before the court are defendant's motions to suppress his statements during the

video recording[3] and to exclude DNA evidence concerning the firearm at issue (Foti Affirmation

[42],¶¶10-45), which have been referred to me by District Judge Frank P. Geraci, Jr. for initial

consideration [3].[4]  Having reviewed the parties' submissions [42, 46, 50] and heard oral

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF
pagination (upper right corner of the page).

[2]     The flash drive containing the video is being forwarded to District Judge Geraci's chambers for
his review.

[3]     Following oral argument, the government advised the court and defendant by e-mail that it does
not intend to offer any of defendant's statements after the 5:26:50 p.m. mark in the recorded interview in
its case-in-chief at trial.

[4]     Defendant's counsel confirmed at oral argument that the remaining portions of defendant's
pretrial motion [42] were resolved.

argument on February 23, 2021 [51], for the following reasons I recommend that the motions be denied.

## DISCUSSION

**A.    Motion to Suppress Statements**[5]

In seeking suppression of his statements, defendant raises four arguments, all of which center on the alleged violation of his Fifth Amendment rights under Miranda v. Arizona, 384 U.S. 436 (1966).[6]  First, he argues that he was interrogated before his Miranda rights were administered (Foti Affirmation [42], ¶¶16-26).  Defendant next argues that the Miranda warnings he received were defective and that he did not waive his rights. Id., ¶¶27-31.  Third, he argues that the interrogation continued despite him invoking his right to counsel and to remain silent. Id., ¶¶32-33.  Finally, defendant contends that he was questioned by different law enforcement officers without Miranda warnings being readministered. Id., ¶33.

I will address these arguments individually.

**1.    Was Defendant Interrogated Without Receiving Miranda Warnings?**

Miranda rights are triggered only when a defendant is being interrogated in police custody. See Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir.1998). "Interrogation" under Miranda is "express questioning" or "words or actions . . . that the police should know are

---

[5]    Defendant notes that he may also have evidentiary objections to the admission of portions of the recorded video.  Foti Affirmation [42], ¶14.  Those are issues for resolution by the trial judge.

[6]    The government asserts that without an affidavit (or declaration) from defendant "personally alleg[ing] any facts in support of his allegation that this Fifth Amendment rights were violated . . . . the motion should be summarily denied".  Government's Response [46], p. 3.  Although an affidavit or declaration from someone with personal knowledge is usually required to support a suppression motion, based on the discrete arguments raised by defendant, all of which can be determined by the uncontroverted video recording, I conclude that absence of such a submission is not fatal to the motion.

reasonably likely to elicit an incriminating response". <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).

"The weight of authority appears to hold that a defendant bears the burden of establishing that he or she was subjected to custodial interrogation in order to establish a constitutional violation as the basis for suppression of evidence." <u>United States v. Artis</u>, 2010 WL 3767723, *4 (D. Vt. 2010). In any event, regardless of who bears the burden of proof, I conclude that the recorded interview demonstrates that no pre-<u>Miranda</u> interrogation occurred.

At approximately 3:37 p.m.[7] - approximately seven minutes into the recording - <u>Miranda</u> warnings were administered. None of defendant's statements during that brief interval were prompted by interrogation. Prior to defendant receiving <u>Miranda</u> warnings, his statements can largely be classified as volunteered, which do not require such warnings. *See* <u>Miranda</u>, 384 U.S. at 478 ("[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"); <u>Wolfrath v. Lavallee</u>, 576 F.2d 965, 973 n. 6 (2d Cir.1978) ("since the statement . . . was a gratuitously volunteered statement, <u>Miranda</u> itself is inapplicable, for spontaneous statements"). As defendant himself characterizes it, some of the pre-<u>Miranda</u> discussion involved him "asking to call his girlfriend and being denied" and "insisting that these charges are fraudulent". Foti Affirmation [42], ¶12.

The only specific portions which defendant identifies as interrogation are: 1) the officer's discussion of law enforcement's surveillance of defendant (Foti Affirmation [42], ¶22); (2) the officer's statements "Do you know the rap you have? . . . . You have a very powerful name on the street", and informing defendant that he was "assisting ATF in an investigation" (<u>id</u>., ¶23); and (3) the officer pointing to the warrant and stating "it's dated right there", in

---

[7] All times references are to the time-stamps contained on the video recording, and all quotations are from an unofficial chambers transcription.

response to defendant's question concerning how long the arrest warrant had "been out". Id., ¶24.

However, in the context of the discussion that was occurring, none of these statements or questions were intended to elicit an incriminating response. For example, the statement "You have a very powerful name on the street" came in response to questions from defendant about the manner in which the arrest warrant was executed. The officer explained that he had "to take every precaution", because of defendant's reputation. 3:34:38 p.m. Likewise, the discussion of law enforcement's surveillance was prompted by defendant's own statements - "I've been watching you . . . you've been watching me" (3:33:02 p.m.), and was followed shortly thereafter by defendant asking, "what took you all so long". 3:33:22 p.m.

As the government notes, the video demonstrates that if any pre-Miranda interrogation occurred, it was defendant, rather than the officer, who was the interrogator and guided the conversation in an effort to understand the evidence against him. *See* Government's Response [46], p. 4. The officer in the interview room with defendant made clear that his role was limited to "carrying out [the] arrest warrant, that's it", and that the ATF Special Agent in charge of the case would be available to answer his questions. 3:32:06 p.m. Tellingly, even while his Miranda rights were being read to him, defendant acknowledged "we're just shooting the shit". 3:37:20 p.m. Therefore, I conclude that defendant is not entitled to suppression on this basis.


**2.      Was there a Valid Miranda Waiver?**

The government bears the burden of proving defendant's "knowing and voluntary waiver of his Miranda rights . . . . by a preponderance of the evidence". United States v. Male

-4-

Juvenile, 121 F.3d 34, 39 (2d Cir. 1997). "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right". United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995). "Only if the totality of the circumstances 'reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.'" Male Juvenile, 121 F.3d at 40 (*quoting* Moran v. Burbine, 475 U.S. 412, 421 (1986)).

Initially, defendant argues that his Miranda rights were administered in less than ten seconds, "so quickly" that "[t]here is no way that [he] could substantively be advised of his rights". Foti Affirmation [42], ¶28. Notwithstanding the hurried fashion in which defendant's Miranda rights were administered, there is no claim that the rights read to defendant were incomplete, and there is nothing before me to suggest that they were not understood by defendant. *See* Mecham v. Smith, 2011 WL 3626307, *10 (D. Idaho 2011) (although "[t]he Miranda warning itself was read to Petitioner quickly", "[n]othing in the DVD recording of the interview shows that Petitioner was not paying attention or that he did not understand the content of the warning"); United States v. Peragine, 2016 WL 11440140, *9 (N.D. Ga.), adopted, 2016 WL 4072746 (N.D. Ga. 2016) ("while Agent Orkin 'recited the standard Miranda warnings quickly, the audio recording makes clear that he spoke clearly and calmly, and that Peragine clearly said 'yes sir' when asked whether he understood those rights'"); United States v. Hunter, 2020 WL 7496502, *4 (D. Minn.), adopted, 2020 WL 7489766 (D. Minn. 2020) ("[a]lthough the Court agrees that Officer Schroder read the Miranda warning in a rushed manner, the words were still clear and understandable").

No sworn statement has been submitted by defendant, who had prior interactions with the criminal justice system, substantiating that he did not understand the <u>Miranda</u> rights as read to him.  In fact, he expressly stated "of course" when asked if he understood the rights that had been read to him. 3:37:24 p.m.  His subsequent invocation of his right to remain silent (5:27:00 p.m.) confirms his understanding of the rights that were read to him.  He points to (and the video evidences) no impairment, cognitive or otherwise, that rendered him unable to understand his rights at that time.

Defendant also argues that questioning continued without him ever being asked whether he agreed to waive his rights. Foti Affirmation [40], ¶30.  However, a "waiver need not be express". <u>United States v. Plugh</u>, 648 F.3d 118, 127 (2d Cir. 2011). *See* <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979).  So long as the government demonstrates "that a <u>Miranda</u> warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent". <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 384 (2010).

The video demonstrates that after defendant acknowledged that he understood his <u>Miranda</u> rights, the interview proceeded in a conversational tone.  Based on the circumstances of the interrogation and the actions of the officers, defendant's conduct indicates that he was exercising a deliberate choice to waive his rights, and defendant had submitted no sworn statement to the contrary.  Therefore, I conclude that defendant waived his Miranda rights.

### 3.  Did Law Enforcement Impermissibly Question Defendant After an Invocation of <u>Miranda</u> Rights?

"Once <u>Miranda</u> rights have been invoked, interrogation must stop and the invocation must be 'scrupulously honored.'  However, a waiver can occur subsequent to an

initial invocation of <u>Miranda</u> rights if the suspect reinitiates communication." <u>United States v.</u>

<u>Gonzalez</u>, 764 F.3d 159, 165-66 (2d Cir. 2014) (*quoting* <u>Michigan v. Mosley</u>, 423 U.S. 96, 104

(1975)).

        Defendant points to his statement at 4:11:31 p.m. that "I'm not talking".  Foti

Affirmation [42], ¶32.  However, it is plain from the discussion that immediately follows that

statement, defendant quickly changed course and reinitiated communications by twice asking

"why am I here?". 4:11:54 p.m.; 4:12:12 p.m.

        Likewise, defendant appears to argue that he invoked his right to counsel when he

referenced his girlfriend "contacting . . . attorneys" (5:03:34 p.m.).  Foti Affirmation [42], ¶32.

However, "without more, a suspect's reference to his or her lawyer, unaccompanied by any

statement indicating a present intent or desire to speak with a lawyer, is insufficient to invoke the

right to counsel". <u>United States v. Hercules</u>, 2014 WL 1598015, *10 (D.Vt. 2014)

("[d]efendant's presentation of a lawyer's business card, unaccompanied by a coherent request to

speak to a lawyer" does not constitute an invocation of the right to counsel); <u>United States v.</u>

<u>Straker</u>, 596 F.Supp.2d 80, 92 (D.D.C.2009) ("the mere mention of an attorney . . . is not an

unambiguous invocation of the right to counsel"). *See also* <u>Berghuis</u>, 560 U.S. at 381 ("[i]f an

accused makes a statement concerning the right to counsel that is ambiguous or equivocal . . . the

police are not required to end the interrogation . . . or ask questions to clarify whether the

accused wants to invoke his or her <u>Miranda</u> rights"); <u>Davis v. United States</u>, 512 U.S. 452, 459

(1994) ("if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a

reasonable officer in light of the circumstances would have understood only that the suspect

*might* be invoking the right to counsel, our precedents do not require the cessation of

questioning" (emphasis in original)).  Therefore, I conclude that defendant's <u>Miranda</u> rights were not violated.


**4.     Did <u>Miranda</u> Warnings Need to be Readministered?**

At approximately 5:21:45 p.m., two detectives from the Town of Tonawanda, who were not involved in any of the earlier questioning, entered the interview room and began questioning defendant about a homicide.  Defendant appears to argue that this triggered the need for new <u>Miranda</u> warnings. Foti Affirmation [42], ¶33.

It is well settled that "[p]olice are not required to rewarn suspects from time to time". <u>Berghuis</u>, 560 U.S. at 386.  Thus, the mere "passage of time between the administration of <u>Miranda</u> warnings to the Defendant and the later questioning . . . does not render the Defendant's <u>Miranda</u> warnings invalid". <u>United States v. Morgan</u>, 2009 WL 152646, *4 (N.D.N.Y. 2009). Questioning by a law enforcement officer who did not administer the <u>Miranda</u> warning also does not vitiate the earlier waiver. *See* <u>United States v. James</u>, 2011 WL 6306721, *7–8 (S.D.N.Y. 2011), <u>aff'd</u>, 520 Fed. App'x 41 (2d Cir. 2013) (Summary Order) ("[w]hen a <u>Miranda</u> warning is given to a person in custody by someone known by that person to be a law enforcement agent, whether the sovereign of the agent who gave the warning is the same as the sovereign of the agent to which the defendant later gives an incriminating statement is of no moment"); <u>Jarrell v. Balkcom</u>, 735 F.2d 1242, 1254 (11th Cir. 1984) ("the fact that Jarrell confessed to a state officer . . . other than the one who administered the <u>Miranda</u> warnings . . . does not render the warnings insufficient").

Nothing suggests that, at the initiation of questioning by the detectives, defendant no longer understood the rights read to him less than two hours earlier, or their applicability to

the detectives questioning.  In fact, it was during the detectives' questioning that defendant

invoked his right to counsel. *See* video at 5:27:00 p.m.  Therefore, I conclude that Miranda

warnings did not need to be readministered.


**B.      Defendant's Motion to Exclude DNA Evidence**

Defendant moves to exclude the DNA lab reports from the firearm at issue

prepared by the Erie County Central Police Services Forensic Laboratory ("ECPSFL").  Foti

Affirmation [42], ¶¶34-45.  He argues that the DNA analysis is "unreliable because the [STRmix

software used by the ECPSFL] relies upon information that is subjective and can vary to an

impermissible degree depending on the individual analyst and laboratory", and should be barred

pursuant to Fed. R. Evid. 403, 702 and 703, as well as the principles outlined in Daubert v.

Merrell-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Id., ¶¶38, 44-45.

Without contesting the merits of the motion, the government argues that "[s]uch a

motion is more appropriately handled according to a scheduling order set by the trial court".

Government's Response [46], p. 6.  I agree with the government, and therefore recommend that

this motion be denied, without prejudice to renewal before the trial judge.  *See* United States v.

Johnson, 2013 WL 791599, *2 (W.D.N.Y. 2013) ("[i]nsofar as defendant cites to Fed.R.Evid.

403, which addresses the exclusion of relevant evidence, this issue is best left to the

determination of the trial judge at the time of trial"); United States v. Bystrov, 2006 WL

2353419, at *1 (W.D.N.Y. 2006) (reserving the right for a Daubert hearing before the trial

judge).

**CONCLUSION**

For these reasons, I recommend that defendant's motion for suppression of statements (Foti Affirmation [42], ¶¶10-33) be denied, and that his motion to exclude DNA evidence (<u>id</u>., ¶¶34-45) be denied, without prejudice to renewal before the trial judge.  Unless otherwise ordered by Judge Geraci, any objections to this Report and Recommendation must be filed with the clerk of this court by April 14, 2021.  Any requests for extension of this deadline must be made to Judge Geraci.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: March 31, 2021

<u>/s/Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge