UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                REPORT AND
                                         RECOMMENDATION
v.

ERNEST GREEN,                            20-00110(FPG)(JJM)

                    Defendant.
_____

        Defendant Ernest Green is charged in a one-count Indictment [1][1] with being a felon in possession of a firearm on or about July 26, 2020, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Before the court is defendant's motion to suppress DNA evidence [71], which has been referred to me by District Judge Frank P. Geraci, Jr. for initial consideration [3].[2] Having reviewed the parties' submissions [71, 72, 79] and heard oral argument on August 19, 2021 [75], for the following reasons I recommend that the motion be denied.

## DISCUSSION

        This is not defendant's first prosecution in this Court. Along with four co-defendants, he was prosecuted in United States v. Green, *et al.*, 12-cr-00083(WMS)(HBS), for a variety of charges, including those related to the robbery, extortion, kidnapping, and murder of Jabril Harper (the "Harper counts"). In January 2018 a jury acquitted defendant of some of the counts, but it remained hung on the Harper counts. However, before a retrial on those counts, defendant's motion to dismiss the Harper counts, with prejudice, on speedy trial grounds was

---

[1]    Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination (upper right corner of the page).

[2]    Defendant filed a separate motion *in limine* related to the DNA evidence that remains pending before Judge Geraci.

granted by the trial court (United States v. Green, 2018 WL 786185 (W.D.N.Y. 2018)) and later affirmed by the Second Circuit. See United States v. Black, 918 F.3d 243 (2d Cir. 2019). According to the government, the "DNA, related to that case, was originally obtained by state law enforcement, in relation to an investigation of a murder of Jabril Harper" (the "DNA sample"), which "remains pending with the Buffalo Police Homicide Department". Government's Response [72] at 2.

The DNA sample has also been used in this case to connect defendant to the firearm. A September 3, 2020 DNA Analysis Report prepared by the Erie County Police Services Forensic Laboratory [42-3] concluded that the major DNA profile recovered from the firearm allegedly possessed by defendant in this case matches the DNA profile obtained from the DNA sample (*i.e.*, "dried red stain on the tissue of Ernest Green (Item 22, CPS Lab #09-09433)"). Since the DNA Analysis Report indicated that known buccal specimens were required for further comparison, on September 10, 2020 FBI Special Agent Jason Bernhard obtained a search warrant from Magistrate Judge H. Kenneth Schroeder, Jr. to obtain a buccal swab from defendant's mouth for lab testing [79-1, 79-2]. Although the search warrant application referred to the DNA sample, it did not indicate that it was related to the dismissed initial federal prosecution. See Bernhard Affidavit [79-1], ¶8.

In seeking suppression of the DNA evidence, defendant argues that upon the dismissal of the charges in the initial federal prosecution, the DNA sample should have been expunged from the index of DNA records maintained by the FBI pursuant to 34 U.S.C. §12592(d)(1)(A)(ii). Foti Affirmation [71] at ¶¶21-26. Since those details were omitted from the search warrant application submitted to Judge Schroeder, defendant also seeks suppression of DNA evidence obtained as a result of that warrant. Id. at ¶¶27-31.

**DISCUSSION**

A.  **Expungement**

"The DNA Identification Act of 1994 authorized the FBI Director to establish a DNA index, including DNA identification records of persons charged or convicted of crimes . . . 34 U.S.C. § 12592(a)(1)-(2), 'to facilitate law enforcement exchange of DNA identification information,' id. § 12592.   Pursuant to this authority, the FBI Director created the Combined DNA Index System . . . which operates at the local, state, and national levels. The State DNA Index System . . . is managed by participating states, and the National DNA Index System . . . which aggregates all the DNA records contained in the state databases, is managed by the FBI." Cowels v. Federal Bureau of Investigation, 936 F.3d 62, 63 (1st Cir. 2019).

The Act requires the FBI Director to "promptly expunge from the index . . . the DNA analysis of a person included in the index . . . if the Attorney General receives, for each charge against the person on the basis of which the analysis was or could have been included in the index, a certified copy of a final court order establishing that such charge has been dismissed or has resulted in an acquittal or that no charge was filed within the applicable time period".  34 U.S.C. §12592(d)(1)(A)(ii).  The Act also imposes a similar requirement on states, mandating expungement when "the responsible agency or official of that State receives, for each charge against the person on the basis of which the analysis was or could have been included in the index, a certified copy of a final court order establishing that such charge has been dismissed". Id. at §12592(d)(2)(A)(ii).

The government argues that the Act "has no application to the facts of our case" because "[t]here is nothing preventing the state from continuing their murder investigation against the defendant". Government's Response [72] at 3.  That may be so, but the relevant issue is how the DNA sample came to be used in *this* investigation (*i.e.*, was it a DNA identification

-3-

record located through an index created under the Act), not how it may be used in a separate unrelated state investigation. Nevertheless, even if the Act applied and expungement was triggered,[3] defendant has not established that the use of the DNA sample in this prosecution violated the Act.

The Act specifically authorizes the establishment of a DNA index of individuals who have "been *charged* in an indictment . . . with a crime". 34 U.S.C. §12592(a)(1)(B). Defendant falls within that category. He has been charged by Indictment in this action since August 2020, *prior* to the use of the DNA sample for comparison purposes to the DNA recovered from the firearm. Therefore, even if expungement of the DNA sample from the indices was triggered by the favorable termination of the initial federal prosecution, the Indictment in this action permitted the DNA sample to be indexed for use in this prosecution.

While defendant argues that the DNA sample should have been "destroyed" (post-argument letter brief [79] at 2), but "continued to be maintained and analyzed in violation of [his] Fourth Amendment rights after the dismissal of the [initial federal prosecution]" (Foti Affirmation [71], ¶26), he offers no authority supporting his claim that an expungement of his DNA identification records from the indices precludes all subsequent use of those records,

---

[3] I agree with defendant that "notice to the WDNY US Attorney's Office, as an agent of the Attorney General, [of the dismissal of the initial federal prosecution] should be sufficient" to trigger the FBI Director's obligation to expunge the DNA identification records. Defendant's post-argument letter brief [79] at 1. *See* United States v. Hernandez, 714 F. Supp. 1140, 1141 (D. Kan. 1989), aff'd, 913 F.2d 1506 (10th Cir. 1990) ("the parties do not dispute that the Assistant United States Attorney is an agent of the Attorney General and the Department of Justice"). As defendant recognizes, "the State agency that maintains the DNA sample would [also] need to receive a copy of the final court order" to trigger its obligation to expunge the DNA records from its index. Defendant's post-argument letter brief [79] at 2. However, it is not clear from the Act who is obligated to provide that notification and whether such notice occurred here.

including the DNA sample itself. As the government notes, "the defense argument would prohibit the solving of 'cold case' investigations". Government's Response [72] at 3 n. 1.

In any event, even if a violation of the Act had occurred, defendant has not established that suppression of the DNA sample is the remedy. *See* Government's Response [72] at 3. "[T]here is no exclusionary rule generally applicable to statutory violations". United States v. Abdi, 463 F.3d 547, 556 (6th Cir. 2006). "The availability of the suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." United States v. Donovan, 429 U.S. 413, 432 n. 22 (1977). *See also* United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011) ("[i]n the statutory context, suppression is a creature of the statute, and its availability depends on the statutory text"). However, defendant identifies no provision of the Act that makes suppression an available remedy. *See* Clenney, 631 F.3d at 667 ("Congress has shown that it knows how to create a statutory suppression remedy. It did so in 18 U.S.C. § 2515, which provides for suppression of evidence obtained in violation of the statutes governing wiretaps. Yet it chose not to do so in the context of § 2703(c) violations. Therefore, Congress has made clear that it did not intend to suppress evidence gathered as a result of § 2703(c) violations"); United States v. Guzman, 879 F. Supp. 2d 312, 323 (E.D.N.Y. 2012) ("[i]n short, the statutory text does not suggest, in any way, that Congress intended a per se suppression remedy for violations of the JDA's parental notification requirement").

B.	The Search Warrant

Since defendant has not established that there was a violation of the Act, I likewise find no basis to conclude that the omission of the source of the DNA sample rendered the application deficient or misleading. Therefore, I recommend that this portion of defendant's motion also be denied.

## CONCLUSION

For these reasons, I recommend that defendant's motion for suppression [71] be denied. Unless otherwise ordered by Judge Geraci, any objections to this Report and Recommendation must be filed with the clerk of this court by October 4, 2021. Any requests for extension of this deadline must be made to Judge Geraci. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not

raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: September 20, 2021

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
